937 F.2d 465
 CALIFORNIA RURAL LEGAL ASSISTANCE, INC.; American
Federation of Labor and Congress of Industrial
Organizations; International Ladies' Garment Workers Union;
Maria Rita Aguilar; and Maria F. Castillo, Plaintiffs-Appellees,
v.
LEGAL SERVICES CORPORATION; Terrance J. Wear, President;
and Legal Services Corporation Pacific Regional
Office, Defendants-Appellants.
 No. 89-16734.
 United States Court of Appeals,
Ninth Circuit.
 June 28, 1991.
 
 Before CHOY, FARRIS and THOMPSON, Circuit Judges.ORDER
 
 
 1
 The majority Opinion, 917 F.2d 1171, filed October 26, 1990 is hereby amended by adding to it Judge Farris's concurring Opinion, copy of which is attached hereto.
 
 
 2
 FARRIS, Circuit Judge, concurring.
 
 
 3
 I agree with the majority that under traditional tools of statutory construction the term "financial services" is construed appropriately to refer to direct pecuniary aid. I write separately only because I do not find the Immigration Reform and Control Act to have unambiguously expressed the intent of Congress on this matter. Because the intent of Congress is not clear, the level of deference that should be accorded the Attorney General's interpretation poses a more difficult question than the majority opinion would suggest.
 
 
 4
 The term "financial services" is employed variously throughout the Immigration Reform and Control Act. Although the structure of section 1255a(h)(1)(A) suggests a distinction between pecuniary and non-pecuniary benefits, with "financial assistance" signifying direct monetary transfers, subsequent provisions indicate the term "financial assistance" is more amorphous. Section 1255a(h)(4) clouds the distinction by specifying both pecuniary and non-pecuniary assistance programs as forms of assistance not to be construed as "financial assistance." Moreover, 8 U.S.C. Sec. 1161(d)(6) expressly provides "assistance furnished under the Legal Services Corporation Act ... shall not be construed to be financial services." Although not dispositive, the negative inference to be drawn from such provisions is that the Act as a whole does not embrace the restrictive reading of "financial services" to cover only direct pecuniary transfers. Given such inconsistencies, I cannot find that the intent of Congress is free of ambiguity.
 
 
 5
 Because the definition of "financial assistance" is ambiguous, the Attorney General's interpretation would appear to warrant Chevron U.S.A. v. Natural Res. Def. Council, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), deference. In essence, Chevron confers residual authority on the agency, rather than the court, to interpret ambiguous statutory language. "[I]f the statute is ... ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Id. at 843, 104 S.Ct. at 2782. Although I find the statute to be ambiguous, I also find that the deferential standard of Chevron should not govern this case. The majority is, thus, correct in concluding that no deference is due the Attorney General. However, the rationale justifying the court in undertaking an independent construction of the statute is more subtle than the "clear intent" basis offered in the majority opinion.
 
 
 6
 First, it is critical to note that the statutory interpretation at issue defines the scope of the Attorney General's authority under the statute. The plain language of the statute indicates that the Attorney General is only empowered to identify "financial assistance" programs. Thus, the breadth of the Attorney General's authority over federal funding to amnesty aliens turns upon the very definition of "federal assistance." By interpreting the statutory term as broadly as possible, the Attorney General expanded his authoritative jurisdiction. If there is any manner of statutory construction in which the judiciary should not defer to an administrative agency, it is in defining the parameters of the agency's authority under the statute. The agency should not be the arbiter of its own jurisdictional limits. It is in this respect that Chevron, itself, is distinguishable. In Chevron, the EPA was acting unambiguously within the confines of its statutory authority in specifying the requirements for "nonattainment" state permits. Definition of the ambiguous term "stationary source" as permitting the "bubble concept" neither expanded nor contracted the scope of EPA authority; it rather was a question over the manner in which unambiguously conferred authority was to be exercised.
 
 
 7
 Second, and more importantly, the practical rationale underlying Chevron-type deference does not exist in the present case. There is no reason to believe the Attorney General has superior expertise in deciphering the statutory meaning of "financial assistance." The statutory interpretation does not entail theoretic or technical complexities outside the competence of the judiciary. Moreover, the determination as to whether "financial assistance" incorporates services or not is a one-time decision of statutory interpretation which does not embroil the court in continuous involvement with the execution of the statute. At base, judicial deference to agency interpretations ensures the courts not "absorb the administrative functions to such an extent that the executive or legislative agencies become mere fact-finding bodies deprived of the advantages of prompt and definite action." Gray v. Powell, 314 U.S. 402, 412, 62 S.Ct. 326, 333, 86 L.Ed. 301 (1941). Importantly, the issue before the court concerns the generalized question as to whether services constitute "financial assistance," and not the narrow, fact-driven question as to whether a particular program falls within the appropriate definition. Compare Packard Motor Car Co. v. NLRB, 330 U.S. 485, 67 S.Ct. 789, 91 L.Ed. 1040 (1947) (question of whether definition of "employee" under the National Labor Relations Act included foremen was "naked question of law" not entitled to deference) with NLRB v. Hearst Publications, Inc., 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170 (1944) (question of whether specific newsboys were "employees" under National Labor Relations Act was a question of fact entitled to deference).
 
 
 8
 The question of whether the term "financial assistance" covers only direct pecuniary benefits is appropriately viewed as "a pure question of statutory construction for the courts to decide." INS v. Cardoza-Fonseca, 480 U.S. 421, 446, 107 S.Ct. 1207, 1221, 94 L.Ed.2d 434 (1987).
 
 
 9
 Given that deference is not due the Attorney General's interpretation of "financial services," the majority opinion provides a sound basis for constructing section 1255a(h)(1)(A) as specifying "financial assistance" to refer only to direct pecuniary aid and not to assistance in the form of services.
 
 
 10
 I concur.